## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **c/o United States Attorney's Office** | ) | **Civil Action No.** |
| **555 Fourth St., N.W.** | ) | |
| **Washington, D.C.   20530** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **THREE INERTIAL REFERENCE UNITS** | ) | |
| **PART NUMBER 461800-03002203, WITH** | ) | |
| **SERIAL NUMBERS 0451, 0116, AND 0127** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMES NOW**, the plaintiff United States of America, by and through the United States

Attorney for the District of Columbia, to bring this verified complaint for forfeiture in a civil

action *in rem* against the defendant properties, which are three inertial reference units, part

number 461800-03002203.  In further support of its cause, plaintiff states as follows:

### I.     NATURE OF THE ACTION

1. This *in rem* forfeiture action and civil money laundering complaint arises out of an

   investigation by the Bureau of Industry & Security ("BIS"), Office of Export Enforcement

   ("OEE") of a scheme to illicitly procure sensitive products, items, and commodities from the

   United States, ultimately destined for Iran with the purpose of evading U.S. export controls

   and sanctions.  As a part of this scheme, individuals used the U.S. financial system and the

   U.S. aircraft industry to further their scheme.  They employed sophisticated evasion

   techniques and front companies to disguise the true nature of their illicit business dealings, as

   well as to protect the on-going nature of the fraud.

2. For the reasons set forth in more detail below, the United States seeks the seizure and forfeiture of the defendant properties. The defendant properties are subject to seizure and forfeiture pursuant to 18 U.S.C. §981(a)(1)(C), as property constituted or derived from proceeds traceable to violations of a specified unlawful activity, that is, the International Emergency Economic Powers Act ("IEEPA"), codified at 50 U.S.C. § 1701 *et seq.* In addition, the Defendant Assets are subject to seizure and forfeiture under the authority of the Secretary of Commerce, as codified in 22 U.S.C. § 401(a). Finally, the defendant properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in money laundering transactions and attempted money laundering transactions, in violation of 18 U.S.C. §§ 1956 and 1957, and as assets traceable to such property.

## II.    JURISDICTION AND VENUE

3. This court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the District of Columbia. The assets are currently being detained in Miami, Florida, under the detention authority of the Export Administration Regulations (EAR), codified in 15 C.F.R. 758.7 ("Authority of the Office of Export Enforcement, the Bureau of Industry and Security, Customs Offices and Postmasters in clearing shipments.")

### III.    STATUTORY AUTHORITIES

A.    The Export Administration Regulations

5.    The United States Department of Commerce has the authority to prohibit or curtail the export

of goods and technologies from the United States to foreign countries, as necessary, to

protect, among other things, the national security and foreign policy of the United States. The

Department of Commerce implemented that authority through the Export Administration

Regulations ("EAR" or "Regulations") (see below), which restricts the export of certain

goods and technologies unless authorized by the Department of Commerce through issuance

of a valid export license by its Bureau of Industry and Security. The EAR further prohibits

any transaction designed to evade or avoid, or which has the purpose of evading or avoiding

said regulations, including the making of false or misleading statements or concealing a

material fact in the course of the submission of documents relating to an export of goods or

technologies.

6.    The EAR, 15 C.F.R. 730.1, *et seq*., regulate the export of all "dual use" items, that is, items

that have both a commercial application and a military or strategic use. *See* 15 C.F.R.  730.3.

The EAR limit the export of goods and technology that could enhance foreign military

capabilities, jeopardize U.S. national security, or undermine U.S. foreign policy goals.  The

EAR place requirements on exporters and includes a list of products, commodities and items

for which an export license is required.  *See* 15 C.F.R. § 744.

7.    Whether an item requires an export license depends in part on what country the item is being

exported to, who the end-user of the item is, and what the end-user intends to use the item

for.  The EAR expressly requires a license applicant to disclose the names and addresses of

all parties to a transaction, 15 C.F.R. § 748.4(b), including the applicant, purchaser,

intermediate consignee(s) (if any), ultimate consignee, and end-user, 15 C.F.R. § 748.5.

Certain applications must be supported by documents designed to elicit information

concerning the disposition of the items intended for export.  *See* 15 C.F.R. § 748.9(b).

8. The EAR's authorizing statute, the Export Administration Act of 1979 ("EAA"), codified at

50 U.S.C. App. 2401-2420, expired in August 1994, and was reauthorized by Public Law

106-508, signed on November 13, 2000.  The EAA lapsed again on August 20, 2001, but the

Regulations have been continued in full force and effect through periodic reauthorizations

and successive invocations of the International Emergency Economic Powers Act ("IEEPA")

(see below).  On August 17, 2001, President George W. Bush issued Executive Order ("EO")

13222, in which he ordered that all provisions of the EAR "remain in full force and effect"

under the IEEPA authority.  EO 13222 has been extended by successive Presidential Notices,

the most recent being that of August 8, 2013.  *See* 78 Fed Register 49107 (August 12, 2013).

9. To violate, attempt to violate, or conspire to violate any portion of the EAR is a felony

punishable by up to 20 years' imprisonment under IEEPA.  <u>See</u> 50 U.S.C. § 1705.  The EAR

makes it unlawful to engage in any conduct prohibited by, or contrary to, or refrain from

engaging in any conduct required by, the EAR.  It is also unlawful to violate any order,

license or authorization issued thereunder; to cause, aid, abet, solicit, attempt, or conspire to

commit a violation of the EAR, or any order, license, or authorization issued thereunder.  The

EAR prohibits the ordering, buying, removing, concealing, storing, use, sale, loan,

disposition, transfer, transport, financing, forwarding, or other servicing, in whole or in part,

of any item exported or to be exported from the United States, that is subject to the EAR,

with knowledge that a violation of the EAR, or any order, license, or authorization issues

thereunder, has occurred.  *See* 15 C.F.R. § 764.2(a)-(e).

10. Finally, the EAR makes it unlawful to engage in any transaction or take any other action with intent to evade the provisions of the EAR, or any order, license, or authorization issued thereunder.  Id. 764.2(h).

B.        The International Emergency Economic Powers Act

11. This civil forfeiture action relates to violations of the Regulations and Executive Orders issued pursuant to the International Emergency Economic Powers Act ("IEEPA"), codified at 50 U.S.C. § 1701 *et seq.*  The IEEPA gives the President certain powers, defined in § 1702, to deal with any threats with respect to which the President has declared a national emergency, and prescribes criminal penalties for violations thereunder.  *See* 50 U.S.C. § 1705(a).

C.        Title 18, United States Code, Section 554

12. Additionally, 18 U.S.C. § 554, makes it unlawful to export or attempt to export or smuggle from the United States "any merchandise, article, or object contrary to any law or regulation of the United States . . . ."  Violations of the EAR and IEEPA serve as predicate acts for an 18 U.S.C. § 554 violation.

## IV.    PROBABLE CAUSE FOR FORFEITURE

A.        Overview

13. This civil forfeiture action relates to three civil aircraft navigation units currently being detained by the OEE pursuant to the EAR.

14. Kral Aviation (also known as Kral Havacilik Ic Ve Dis Ticaret Ltd.) ("Kral") of Istanbul, Turkey is a firm that purchases and sells civil aviation parts and components.  Kral has never received approval for an export license from BIS.  Kral has received at least 42 shipments of

U.S.-origin aircraft parts, some of which required a BIS license, from March 2011 through July 2012 valued at over $2.1 million.

B.        Commodities Currently Detained

15. An Inertial Reference Unit ("IRU") is an aircraft navigation and flight stability system classified on the Commerce Control List (CCL).

16. On July 26, 2012, agents from OEE ordered detention, pursuant to the EAR, of three aircraft IRUs consigned to Kral.  The IRUs were being prepared for export to Kral by a freight forwarder on behalf of a U.S. exporter, "Company A."  These IRUs, which represent the defendant properties, bear serial numbers 0451, 0116, and 0127.  The sale price for each of these IRUs was $33,000, totaling $99,000.  OEE continues to detain these IRUs at the freight forwarder in Miami, Florida.  Kral ordered these IRUs on or about April 17, 2012.

17. Pursuant to a BIS Certified License Determination, dated November 15, 2012, these IRUs require a BIS license for export to Turkey.  A search of the BIS licensing database indicated that neither Company A, nor Kral, obtained a license authorizing shipment of the defendant properties.

C.        Kral's Previous Attempt to Get a BIS License and Assertion of Iranian
           Representation

18. On or about March 2012, Kral attempted to obtain controlled U.S.-origin items similar to the defendant properties.  The U.S. exporter, Company "B", notified Kral that a BIS license was required.  Company B then applied for such license.  After BIS raised concerns regarding the intended end-user of the IRUs, Kral notified Company B that it was cancelling the order.

19. On April 22, 2011, a U.S. exporter ("Company C") disclosed to the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC") that Kral Aviation had admitted to

Company C that they are a supplier for Iranian aircraft.  Company C understood Kral to be a Turkish extension of Zagros Airlines ("Zagros").

20. Zagros is an Iranian airline company.  On August 15, 2011, pursuant to the EAR, Zagros was added to the BIS Entity List.  *See* 76 Fed. Register 50408.  Inclusion on the BIS Entity List triggers heightened export license requirements.  There is a presumption of denial for all license applications where Zagros is a party to the transaction.  *See* 15 CFR § 744.11(a)

D.    Kral Wire Transfers into the U.S. Financial System

21. OEE has obtained wire transfer and financial records from various U.S. exporters who have conducted business transactions with Kral.

22. Kral paid $671,602.17 to Company A from January 2011 until August 2012 for U.S.-origin aircraft items.  This includes payments of: $33,000 on April 17, 2012; $50,000 on April 24, 2012; and $36,310 on April 25, 2012, for the defendant properties, among other orders; the transmissions of these funds were to a place inside the U.S. from a place outside the U.S., that is, Turkey.

## V.    COUNT ONE

23. The statements made in the above paragraphs are restated as if fully set forth herein.

24. The defendant properties were used to promote a conspiracy to violate the IEEPA, specifically, 50 U.S.C. § 1705, which makes it a crime to willfully attempt to commit, conspire to commit, or aid and abet in the commission of any violation of the EAR.

25. As such, the defendant properties are subject to forfeiture to the United States, pursuant to 18 U.S.C.  § 981(a)(1)(C), as any property which constitutes or is derived from proceeds traceable to a conspiracy to violate the IEEPA.

## VI.    <u>COUNT TWO</u>

26. The statements made in the above paragraphs are restated as if fully set forth herein.

27. Persons in Turkey, as well as Iran, conspired to transmit and transfer three payments for the defendant properties to a place in the U.S. from or through a place outside the U.S., with the intent to promote the carrying on of the conspiracy to violate the IEEPA, EAR, and 18 U.S.C.  § 554, in violation of 18 U.S.C. § 1956(h) and (a)(2)(A).

28. As such, the defendant properties are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions in violation of 18 U.S.C.      § 1956(h), or as any property traceable to such property.

## VII.    <u>COUNT THREE</u>

29. The statements made in the above paragraphs are restated as if fully set forth herein.

30. Persons in Turkey, as well as Iran, conspired to attempt to export and ship from the United States articles, that is the defendant properties, in violation of law, that is the IEEPA and EAR, all in violation of 22 U.S.C. 401(a).

31. As such, the defendant properties are subject to forfeiture to the United States, pursuant to 22 U.S.C. 401(a).

## VII.    <u>CONCLUSION</u>

**WHEREFORE**, the United States of America prays that a warrant for arrest *in rem* and notice issue on the defendant property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

 */s/ Ronald C. Machen Jr*
RONALD C. MACHEN JR.,
D.C. Bar No. 447889
United States Attorney

*/s/ Zia M. Faruqui*
Zia M. Faruqui,
D.C. Bar No. 494990
Assistant United States Attorney
555 4th Street, N.W., Fourth Floor
Washington, D.C.  20530
zia.faruqui@usdoj.gov
(202) 252-7117

## VERIFICATION

I, COLIN A. MAY, a Special Agent with the OEE, United States Department of

Commerce, Bureau of Industry and Security, declare under penalty of perjury, pursuant to 28

U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon

reports and information known to me and/or furnished to me by other law enforcement agents

and that everything represented herein is true and correct.

Executed on this   6th   day of November 2013.


*/s/ Colin May*
COLIN A. MAY
Special Agent
Office of Export Enforcement